## MASON v. SOUTHERN RY.

1. RAILROADS—NEGLIGENCE—SIGNALS—EVIDENCE.—Under allegations of gross negligence in running a train, testimony that defendant company failed to give signals at a public crossing a mile from scene of accident, is competent.

2. EVIDENCE.—Ruling out question calling for opinion of engineer as to what he would have done if his own child had been on track, is harmless error.

3. WITNESS—CROSS-EXAMINATION.—Error in refusing defendant the right to cross-examine a witness put up by plaintiff, but not examined in chief, is cured by giving defendant an opportunity later to cross-examine him.

4. EVIDENCE—RES GESTAE—CONTRADICTION.—Statements of an engineer after accident, while not properly a part of *res gestae,* is admissible to contradict him.

5. ON APPEAL from order refusing motion of nonsuit, this Court only considers grounds upon which motion was made, and not reasons given by Judge for refusing it.

6. NONSUIT.—There was proof here tending to show negligence, and nonsuit properly refused.

7. DAMAGES.—In an action under statute for negligent killing, it is not necessary to prove damages.

8. DOES RULE IN DANNER'S CASE apply to the killing of a child by a railroad?

9. CHARGE.—Illustration in charge, if inapplicable and not misleading, is harmless error.

10. TRESPASSER—INFANT.—Technically, an infant sixteen months old may be a trespasser on a railroad, but charge here properly instructed jury as to distinction between adult and defendant trespassers.

11. IBID.—DOES A RAILROAD COMPANY owe any duty to an infant on its track before its agent discovers it?

12. IBID.—RAILROAD—NEGLIGENCE.—If the direct and proximate cause of the death of an infant is the failure of the agents of a railroad to keep a reasonable lookout and to discover the child in time to prevent the injury, it is as much liable for its death as if it had failed to use proper care after discovering it.

13. CHARGE.—It is not necessary to instruct jury in charge as to effect of evidence, when such instruction was given at time of its reception.

Before GARY, J., Greenville, November, 1899.    Affirmed.

Action for negligent killing of Clara Belle Mason, by Robert Mason, administrator, against Southern Railway. From judgment for plaintiff, defendant appeals.

*Mr. T. P. Cothran,* for appellant, cites: *General duty of a railroad to a trespasser:* 23 S. C., 531; 34 S. C., 299; 34 Am. St. R., 54; 72 N. W., 283; 23 S. E., 775; 74 Fed., 350; 67 Fed., 525; 66 Fed., 115; 52 Fed., 362; 76 Fed., 201. *Duty to infant trespasser:* 49 S. C., 12; 76 Fed., 205; 22 So., 900; 74 Fed., 350; 126 Mass., 377; 125 Mass., 75; 44 Am. R., 106; 4 Hughes, 157; 47 Penn. St., 300; 7 N. E., 866; 47 Fed., 689; 105 N. Y., 164; 25 S. C., 24; 69 Pa. St., 210; 23 S. C., 531; 24 Kan., 627; 69 Ill., 409; 39 Md., 438; 64 Mo., 421; 8 Wr., 375. *Rule in Danner's case:* 4 Rich., 330; 8 Rich., 193; 26 S. C., 53; 10 Rich., 52, 230; 9 S. C., 84. *As to evidence of negligence:* 76 Fed., 205; 19 S. C., 373; 5 S. C., 369; 47 Am. R., 403; 41 Am. R., 333; 17 N. Y., 133; 39 Am. R., 526; 7 Me., 425; 19 Mo., 557; 26 Gratt., 328; 4 S. C., 153; 119 U. S., 99; 27 S. C., 63. *Error to receive evidence of failure to give signals at crossing one mile away:* 33 S. C., 135; 34 S. C., 292, 444; 29 S. C., 517; 41 S. C., 1. *Error to refuse cross-examination of witnesses:* 25 S. C., 322; 16 S. C., 550.

*Messrs. A. H. Dean* and *Jos. A. McCullough,* contra, cite: *Evidence as to failure to give signals proper:* 52 S. C., 323. *No right to cross-examine witness not examined in chief:* 12 S. C., 97. *Admissions of agent within scope of agency admissible:* 12 Rich. L., 634; 6 Gray, 450; 28 S. C., 158; 53 S. C., 448. *Also competent as res gestae:* 47 S. C., 13. *As to motion for nonsuit:* 21 S. C., 550; 22 S. C., 563; 25 S. C., 29. *Rule of Danner's case applies:* 36 L. R. A., 575; 25 L. R. A., 784. *Burden of proof of accident being unavoidable is on defendant:* 4 Rich. L., 330; 52 S. C., 324; 50 S. C., 49. *No proof of damages necessary:* Rev. Stat., 2316; 47 S. C., 375. *As to duty of railroad to child on its track:* 36 L. R. A., 375; 25 L. R. A., 286, 786; 8 S. E., 258; 5 S. E., 573; 21 L. R. A., 76; 23 S. E., 284.

June 27, 1900.  The opinion of the Court was delivered by

MR. JUSTICE GARY.  The facts of this case are thus suc-
cinctly set forth in the preliminary statement prefacing the
argument of the appellant's attorneys, and admitted to be
correct by the respondent's attorneys, to wit: "Action for
damages, $1,999.99, instituted in the Court of Common
Pleas for Greenville County, September 29, 1899, by Robert
Mason, as administrator of Clara Belle Mason, deceased, for
alleged negligent killing of intestate by defendant, Southern
Railway Company, near South Tiger trestle, in Spartanburg
County, on Atlanta and Charlotte Air Line Railway, Au-
gust 21, 1898.  The intestate was a child sixteen months
old, and was killed on the track, about seventy yards from
a neighborhood crossing, near the house of her father, the
plaintiff in this suit.  Tried before Judge Gary and a jury at
Greenville, November 22, 1899; verdict for plaintiff,
$1,999.99.  The plaintiff alleges that on the day named the
child crawled unobserved from the plaintiff's house, which is
near the track, and in full view, and got upon the track, the
mother at the time having no servants about the place, and
being herself engaged in domestic duties; that the plaintiff
was away from home at the time; that about a mile from the
point of collision defendant's track crosses a public highway,
and the mother was accustomed to watch upon the track for
her children when the signals for that crossing were given;
that upon the occasion in question, the defendant failed to
give the signals, and if the signals were given the mother did
not hear them; that while the child was seated upon the
track, one of defendant's trains, which was behind time and
run at unusually rapid speed, recklessly and with grossest
negligence ran over the child and killed it; that at the time
the child was seated on the track at a point where a neigh-
borhood road or 'traveled place' crosses said track, and the
required signals were not given; that the agents of the de-
fendant knew the location of the plaintiff's house, and for
almost a mile in the direction from which the train ap-
proached, the track was straight; that the engineer and fire-

man saw the child upon the track in ample time to have stopped the train before striking it, and if they did not actually see and recognize it, they could, by the exercise of ordinary care in keeping a lookout, have seen and recognized it and stopped the train in time to avoid striking it. The specific acts of negligence, recapitulated in the complaint, are stated to be: (1.) In not stopping the train after having observed the child in time to avoid the collision. (2.) After first seeing the object, in not keeping a strict watch upon it, by which they would have recognized it as a human being in time. (3.) In not keeping a proper lookout along this stretch of track, which ordinary care and a proper regard for life (human and animal) demanded, as well as the law of the land, which would have enabled the fireman or engineer to have seen the child in time. The remaining allegations of the complaint are formal, referring to the incorporation of defendant, the heirs at law of the intestate, the appointment of the plaintiff as administrator and the amount of damages.

The answer of the defendant admits its corporate existence; that the child was killed by its train; and denies the other allegations of the complaint. It alleges that the child was a trespasser upon the track at a place where she had no legal right to be, and where the servants of the company had no reason to suppose she would be; that as soon as she was discovered they did all in their power to avoid the accident; that the defendant owed no duty to the child, save to exercise ordinary care to avoid injuring it after discovery; that it was impossible for the engineer to have seen the child in time to avoid striking it, as the child crawled upon the track on the left side of the engine, when the train was not more than 150 feet away, and too close for the engineer to avoid the collision. The defendant also pleads the contributory negligence of the parents."

The appellant has argued the exceptions under the heads of evidence; motion for nonsuit; burden of proof; and Judge's charge.

Subdivision "a" of the first exception assigns error as follows: "(a) The presiding Judge erred in admitting evidence to the effect that the defendant failed to ring the bell or blow the whistle for the Burnett crossing, a mile from the scene of the accident, for the reason that said testimony was irrelevant to the issue. This exception applies to the testimony of Robert Mason, T. J. Burnett, Ida Mason, Henry Pinson and William Smith upon this point, and the ruling of the presiding Judge to this effect: 'I think the failure to blow the whistle or ring the bell is, according to law, evidence of negligence.' " The complaint alleges gross negligence and recklessness on the part of the defendant in running its train at the time the accident occurred. The answer sets up the defense of contributory negligence on the part of the infant's parents; the complaint also alleges that the highway crosses the defendant's track about a mile from the place where the collision took place; and when the statutory signals were given when approaching said crossing, the mother of the child was accustomed to look out upon defendant's track to see if any of the children were in danger; that the defendant failed to give the statutory signals—at least, she did not hear them on that occasion. Under these circumstances the Circuit Judge properly allowed the jury to consider this testimony in determining the proximate cause of the injury. *Mack* v. *R. R. Co.,* 52 S. C., 323.

Subdivision "b" alleges error as follows: "(b) The presiding Judge erred in refusing to allow the witness, J. D. Pettus, to answer the question: 'If it had been one of your own children on that track at the time, could you have done anything more to prevent striking it?' Such question being competent and relevant to show that degree of care exercised by the engineer after he discovered the child crawling upon the track." This question merely called forth an expression of opinion, and even if it could be regarded as erroneous, it was harmless.

Subdivision "c" is as follows: "(c) The presiding Judge

erred in refusing to allow the defendant to cross-examine the witness, Ed. James, who was put up by plaintiff." When a witness is sworn, he becomes subject to examination in chief and to cross-examination. The right of cross-examination is not destroyed by the failure to examine in chief. This error was, however, cured when the defendant's attorney thereafter was permitted to cross-examine the witness.

Subdivision "d" is as follows: "(d) The presiding Judge erred in overruling defendant's objection and allowing witness, Ed. Jones, to answer the question: 'Did Mr. Pettus say down there at the track that he thought it was a dog or a chicken until he got too close?' Answer. 'Yes, sir, he did.' Upon the ground that the declaration was not a part of the *res gestae*, and was irrelevant to the issue." When Pettus was on the stand, he was asked if he did not say to Mason, the father of the child, when the train backed to the place where the collision took place, at the time Mason climbed up in the cab, that he thought it was a dog or a chicken on the track, and that he did not have time to stop then. He answered, "No." The foundation was properly laid for contradicting the witness, and the testimony was at least admissible for that purpose.

Subdivisions "e," "f" and "g" are as follows: "(e) The presiding Judge erred in overruling defendant's objection to and allowing the witness, Hampton Mason, to answer the question, 'Did you hear the fireman say to the engineer, 'If you had paid attention to me when I told you that there was something on the track, maybe this thing would not have happened?' 'Yes, sir;' for the same reason as in (d), *supra*.

"(f) The presiding Judge erred in overruling defendant's objection to allowing the witness, Robert Mason, to answer the question: 'And did he (engineer) say, 'I thought it was a dog or a chicken, until I got up close to it?' 'Yes, sir;' for the same reason as in (d), *supra*.

"(g) The presiding Judge erred in overruling defendant's objection to and allowing the witness, Ida Mason, to

answer the question, 'Did you hear the engineer say to your husband that he thought that the child was a dog or a chicken, until he got too close to it;' for the same reason as in (d), *supra.*" They are disposed of by what was said in considering subdivision "d."

The second exception is as follows: "The presiding Judge erred in overruling defendant's motion for a nonsuit. (a) There was an entire failure of proof of neglegence on the part of the defendant. (b) The evidence showed that the child was upon the track at a point where it had no legal right to be, and where the defendant is not presumed to have supposed that it would be; it was incumbent upon plaintiff to offer testimony tending to ·show that the child was discovered by defendant's agents in time to avoid striking it, and that they negligently failed after such discovery to avoid the disaster. There is total failure of the testimony upon both of these points. (c) It was error to hold that a child could not be a trespasser on a railroad track. (d) It was error to hold that the child was not wrongfully on the track. (e) It was error to apply the rule in Danner's case to the facts of the case at bar. (f) It was error to hold that the burden of proof was upon the defendant to show that the accident was unavoidable, that it could not be helped. (g) There was no proof of damages." The defendant made a motion for a nonsuit on two grounds: 1st. Because there was no negligence on the part of the railroad company; and 2d. That there was no proof of damages resulting to the plaintiff in this case from the death of the child. The presiding Judge, in overruling the motion for nonsuit, stated somewhat at length the reasons that induced him to refuse the motion.

The only questions, however, that are properly before this Court for consideration are, whether there was error in refusing the motion for nonsuit on the grounds that there was an entire failure of testimony showing negligence, and that there was no proof of damages re-

sulting to the plaintiff from the death of the child.    Without stating the different circumstances tending to show negligence, this Court is satisfied that there was evidence tending to prove that fact.

We will next consider the second ground of the motion for nonsuit.    Section 2316, Rev. Stat., provides, that "the jury may give such damages as they think proportioned to the injury resulting from such death to the parties, respectively, for whom, and for whose benefit, such action shall be brought."    In the case of *Petrie* v. *R. R. Co.,* 29 S. C., 303, cited with approval in *Strother* v. *R. R. Co.,* 47 S. C., 375, the Court says : "Again, it will be noticed that our statute, unlike many others of a similar character, does not speak of a *pecuniary* loss or injury, which might possibly tend to show that the injury for which damages are allowed was confined to the deprivation of some legal claim, susceptible of measurement by a pecuniary standard, but its language is much broader, and gives to the jury the right to award such damages as they might think proportioned to the injury resulting from such death."    The statute and the cases construing it, show that the second ground of the motion for nonsuit was properly overruled.

We have not considered whether the Circuit Judge erred in his interpretation of the rule in Danner's case, as his remarks in reference thereto were made in refusing the motion for a nonsuit.    We are not, however, to be understood as approving his construction thereof.

The third exception alleges error as follows : "The presiding Judge erred in holding, upon motion for a nonsuit, that the burden of proof was upon the defendant to show that the accident was unavoidable, that they could not help it; thus depriving the defendant of the option of putting up testimony or not, as it may have been advised."    This exception is disposed of by what was said in considering the second exception.    But even if it be conceded that there was error, it was harmless.

Subdivision "a" of the fourth exception is as follows :

"(a) The presiding Judge erred in illustrating the law applicable to the case by the hypothetical case stated to the jury, for the reason that in the cases stated by him the driver upon the highway and a child upon the highway had the same right to be there; whereas, in the case at bar, the railroad company, at the point of accident, had the exclusive right to the use of its track; the illustration, therefore, was inapplicable." The only error of which the appellant complains is that the illustration was inapplicable. Even if it was inapplicable, it was not such as to mislead the jury.

Subdivisions "b," "c," "d," "e," "f," and "g" are as follows: "b. The presiding Judge erred in refusing defendant's first request to charge, which was as follows: 'A railroad company owes no duty to a trespasser upon its track until the employees actually see him in a position of danger,' and in holding, 'An infant cannot commit a trespass,' it being submitted that said request embodied a correct principle of law applicable alike to adults and children, and that an infant may become a trespasser. (c) The presiding Judge erred in refusing defendant's third request to charge, which was as follows: 'The law imposes upon railroad companies no duty to trespassers upon its track except the duty of exercising reasonable care not to inflict injury upon them after they are discovered;' and in holding, 'A child cannot become a trespasser, a child can do no wrong; it has no appreciation of right or wrong, and, therefore, can do no wrong.' It being submitted that said request embodied a correct principle of law applicable alike to adults and children. Every animate object upon the track must occupy the relation either of trespasser or of one lawfully there. (d) The presiding Judge erred in refusing defendant's fifth request to charge, which was as follows: 'A railroad company owes no duty to trespassers to be on a lookout for them at a point where they have no legal right to be, and where the company has no notice that they will probably be.' It is submitted that this request embodied a correct principle of law applicable to the

case. (e) The presiding Judge erred in refusing defendant's sixth request to charge, which was as follows: "The above rules apply equally to adults and children of very tender age. Up to the point of discovery of the trespasser by the employees of the company, the duty of railroads to adults and children of tender years is exactly the same.' It is submitted that the request embodied a correct principle of law applicable to the case. (f) The presiding Judge erred in modifying the defendant's seventh request to charge, by adding the following: 'That is true, unless they had been negligent in not discovering the child.' It is submitted that the defendant was entitled to the charge unqualified; the rule being that up to the point of discovery the defendant owed the child trespassing on its track no duty, and consequently could not be guilty of negligence in not discovering it." The seventh request is as follows: "Seventh. After discovery of the child by the employees of the company, the duty of the company to children incapable of realizing their danger is higher than that due to adults. The employees may assume that an adult will heed the signals of danger and get off the track; an infant, however, cannot be assumed to possess this capacity, and the employees upon discovering it must use all reasonable effort to stop the train. This duty, however, does not arise until the perilous position of the child has actually been discovered by the employees." "(g) The presiding Judge erred in modifying the defendant's ninth request to charge, by adding the following: 'That I charge you, unless they were negligent in not seeing the child.' It is submitted that the defendant was entitled to the charge unqualified; the rule being as stated in (f), *supra.*" The ninth request is as follows: "Ninth. If the jury believe from the evidence that the employees of the company made every reasonable effort to avoid striking the child after discovering it upon the track, the company is not liable, and their verdict should be for the defendant."

The exception by these subdivisions raises two questions, to wit: 1st. Was there error on the part of the presiding

Judge in charging the jury that the infant, by reason of its tender years, could not be a trespasser; and 2d. Was there error in refusing to charge the jury that the law does not impose upon a railroad company any duty to trespassers upon its track, except the duty of exercising reasonable care not to inflict injury upon them, after they are discovered.

We will first consider whether the presiding Judge erred in charging that the infant, by reason of its tender years, could not be a trespasser. While, in strictness of law, an infant may be a trespasser when it goes upon the track of a railroad company without its permission or without lawful authority, there are, nevertheless, well defined distinctions between an adult and an infant trespasser. An infant sixteen months of age does not know right from wrong, and, therefore, when it goes upon a railroad track, it cannot be said that it intended to commit such an act as in an adult would make him a trespasser or wrongdoer; it cannot be guilty of contributory negligence; it is not amenable to criminal law, and is not liable, in damages, when an adult would be under similar circumstances. When all the remarks of the presiding Judge are considered together, it will be seen that he drew the attention of the jury to this distinction, and although he was technically in error in saying that an infant could not be a trespasser, the jury, after his explanation, could not have been misled.

We will next consider whether there was error in refusing to charge that the law does not impose upon a railroad company any duty to trespassers upon its track except the duty of exercising reasonable care not to inflict injury upon them after they are discovered. The ruling of the presiding Judge must be considered with reference to the fact that the infant was of very tender years, to wit: only sixteen months of age. The question whether a railroad company owes any duty to an infant trespassing upon its track until it discovers the infant, has given rise to much discussion, and the authorities upon this subject are in irreconcilable conflict. Even conceding that a railroad com-

pany is not bound, as a general proposition, to lookout for trespassers upon its track, it, nevertheless, is bound to exercise ordinary care in running its trains. The law imposes upon it the duty of keeping a reasonable lookout for obstructions on its track. The safety of its passengers and the rights of the public generally demand the enforcement of this rule. It is a general rule of law that a railroad company is liable in damages for an injury inflicted by it, when its negligence was the direct and proximate cause of the injury. If the direct and proximate cause of the infant's death was the negligence of the defendant in failing to keep a reasonable lookout and to discover the child in time to have prevented the injury, it is as much liable in damages as if the proximate cause of the injury had been its negligence after discovering the child upon its track. *Bottoms* v. *R. R.*, 25 L. R. A. (N. C.), 784; *Gunn* v. *R. R. Co.*, 36 L. R. A. (W. Va.), 575; Wood's Ry. Law, pages 1275-6-7-8-9 and 1280.

Subdivision "h" is as follows: "(h) The presiding Judge erred in not charging defendant's eleventh request to charge, which was as follows: 'If the jury believe from the evidence that an employee of the company has made a statement or declaration (after the accident and not a part of the *res gestae*) inconsistent with his testimony in this case, they may consider such inconsistency as tending to discredit his testimony, but not as independent evidence of the company's negligence.' It being submitted that such request embodied a correct principle of law applicable to the case." The plaintiff in opening his case offered in evidence the said declarations, but they were held to be inadmissible on the ground that they did not form part of the *res gestae*. The employees, when examined in behalf of the defendant, were cross-examined by the plaintiff in regard to the said declarations, and they denied making them. The plaintiff, in reply, then offered the witnesses originally produced to prove the declarations. The record shows that the following took place: "Mr. Cothran objects on the ground

6—58

that this question is irrelevant, and that counsel proposes to contradict the witness upon an irrelevant point, and submits that it can't come in unless it is part of the *'res gestae,'* and within the proper scope of his agency. The Court: The testimony must be relevant. I think it is competent. Mr. Cothran excepts. By Mr. Dean: Did Mr. Pettus say that you went back there to see whether the track was straight or curved? Mr. Cothran: I ask that your Honor will instruct the jury upon the delivery of that testimony, that they can consider that testimony only for the purpose of discrediting the witness, if they believe this evidence. If they believe the statement to be true, and that the engineer is mistaken, then they can consider this testimony only to the extent of discrediting the engineer, and not for the purpose of introducing it as independent evidence. The Court: Yes, gentlemen of the jury, Mr. Cothran has stated the ground upon which the testimony is to be considered clearly to you, and it is correct." The request was not read to the jury, and there was no necessity to charge the proposition therein stated, as the jury had already been instructed upon the subject.

Subdivision "i" is as follows: "(i) The charge of the presiding Judge was inconsistent, contradictory and confusing to the jury. For instance, he charged the fourth and eighth requests, which we submit were good law, and qualified the seventh and ninth requests by holding that the defendant may have been guilty of negligence in not discovering the child." When the charge of the presiding Judge is considered in its entirety, it will be seen at a glance that the objections urged by the appellant are unfounded.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.