## SENTELL v. SOUTHERN RY.

1. EVIDENCE—WITNESS—PRINCIPAL AND AGENT—RES GESTAE—CONTRADICTING.—For the purpose of discrediting an agent, he may be contradicted after foundation laid by showing that he at another time stated the details of a transaction other than he stated them on his examination, although such statement cannot be a part of *res gestae.*

2. RAILROADS—LICENSEE—TRESPASSER — LOOKOUT—NONSUIT—JURY.— Where a person is sitting on the end of a crosstie, with his head in his hands and his feet in a path along the track which pedestrians had been using as a walkway for more than twenty years without objection of the railway company, at a point on the track at which he could have been seen by the engineer for some distance before reaching him, it is proper to refuse a nonsuit and to submit to the jury the questions of the relation of the deceased to the company, and whether there was negligence on part of engineer in striking him with his engine, and whether it was duty of engineer to keep a lookout.

3. CHARGE.—A hypothetical statement of the facts in the case is not a charge on the facts.

Before special Judge, Joseph A. McCullough, Edge-field, November, 1903.    Affirmed.

Action by Rena A. Sentell, as administratrix of James C. Sentell, against Southern Railway.    From judgment for plaintiff, defendant appeals.

*Mr. E. M. Thomson,* for appellant, cites: *Deceased was trespasser:* 57 S. C., 243; 64 S. C., 7; 34 S. C., 292; 67 S. C., 499.    *Duty of railroad to trespasser:* 57 S. C., 243; 64 S. C., 7; 61 S. C., 560; 34 S. C., 292.    *Evidence susceptible of only one inference, and nonsuit should have been granted:* 8 Rich. L., 120; 2 McM., 406; 67 S. C., 499.    *As to recovery, where party is injured on track in unconscious condition:* 18 S. W., 670; 75 Tex., 583.    *Contradiction of engineer was improper:* 27 S. C., 63; 19 S. C., 373; 119 U. S., 105; 65 Pa. St., 59; Rapalye's Law of Wits., 346.

*Mr. J. W. DeVore,* also for appellant, cites: *Nonsuit should have been granted, because there was no evidence to show negligence of defendant, or that engineer saw deceased was in helpless condition:* 57 S. C., 248; 64 S. C., 22; 23 S. C., 535.    *Contradiction of engineer was not competent:* 1 Green., 113, 462.

*Messrs. J. W. Thurmond, Wm. P. Calhoun* and *Croft & Tillman,* contra.    *Mr. Calhoun* cites: *Contradiction of engineer proper:* 58 S. C., 75; 47 S. C., 13.    *Defendant company is liable under circumstances here, if deceased were either a trespasser or licensee:* 6 N. E. R., 236; 14 N. E. R., 627; 49 S. C., 12; 78 W. R., 687; 4 A. & E. R., 608; 45 A. & E. R., 107; 32 L. R. A., 218; Wood on R. R., sec. 1462; 6 L. R. A., 243; 30 A. S. R., 53; 36 L. R. A., 576; 39 L. R. A., 399; 49 S. C., 12; 61 S. C., 556.    *Whether deceased was a trespasser or licensee, was for jury:* 58 S. C., 75; 61 S. C., 556; 39 S. C., 12.    *Proper to instruct jury as to duty of defendant to keep a proper lookout:* 25 L. R. A., 287; 30 L. R. A., 257; 51 S. C., 222; Wood on R. R.,

1462; 30 A. S. R., 53; 36 L. R. A., 576. *Hypothetical statement of facts in charge is not error:* 58 S. C., 373.

*Mr. Thurmond* cites: *As to the contradiction of the engineer:* 58 S. C., 75; 26 S. C., 117; 12 Rich., 654. *On question of nonsuit: Whaley* v. *Bartlett,* 42 S. C.; 29 S. C., 303; *Hicks* v. *R. R.,* 63 S. C. *Proper for jury to decide relation of deceased to defendant:* 49 S. C., 17; 29 L. R. A., 757. *As to duty of engineer to keep a lookout:* 19 Ency., 937; 12 S. E., 79; 24 S. E., 805; 6 S. E., 79; 25 Mich., 279; 5 Snead, 524; 52 Tex., 178; 27 Conn., 393; 56 Col., 513; 27 S. E., 76. *Duty of railroad to licensee:* 17 Wal., 657; 57 S. C., 208; 61 S. C., 556; 102 U. S., 235; 27 S. E., 27; 23 S. E., 773; 5 S. E., 576; 46 S. E., 335. *Hypothetical statement of facts in charge is not charge on facts:* 61 S. C., 556; 63 S. C., 219.

November 23, 1904.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.   James C. Sentell, by occupation a carpenter, aged about sixty-four years, while sitting upon a crosstie of the Southern Railway Company, on the 28th day of May, 1900, in the county of Aiken, S. C., was struck by a railway train, to wit: a passenger train of defendant's railway, on its way from Augusta, State of Georgia, through the city of Columbia, S. C., on its way to the north, and instantly killed.

After the plaintiff was appointed the administratrix of the estate of the said James C. Sentell, deceased, her deceased husband, she brought her action against the defendant to recover for herself and her three children the sum of $1,999.00-100 as damages, because she alleged that her said husband's death had been caused by the negligence of defendant.   The action was once before this Court on the question of the right of the Court of Common Pleas to amend the summons and complaint by striking out the word "The" from the summons and complaint; this Court holding

that such amendment was legitimately allowed—*67 S. C.,* *229.* After its return to the Circuit Court, and after the amendments were made and the defendant had filed its amended answer, the action came on for trial on its merits before special Judge Joseph A. McCullough and a jury. The verdict of the jury was in favor of the plaintiff in her representative capacity for $1,999. When judgment was entered thereupon, the defendant appealed to this Court on the following grounds, to wit:

"1. Excepts because the presiding Judge erred in allowing plaintiff's attorney, over the defendant's objection, to ask J. T. McPherson, the engineer, and a witness for defendant, the following question: 'Did you not say to, or in the presence of, Barton, on Broad street, in the city of Augusta, December after the killing, in substance the following: "I saw the man on the track when I first turned the curve; when I passed the dip was looking for him to get up;" ' and in allowing the witness to answer the same; and further erred in allowing the plaintiff to put up Barton, a witness for plaintiff, to contradict the said J. T. McPherson; whereas, the said testimony was incompetent and irrelevant, being no part of the *res gestae,* and not being within the scope of the said engineer's agency, and was further incompetent for the purpose of contradiction.

"2. Excepts because the presiding Judge erred in overruling the defendant's motion for a nonsuit, which was made upon the following grounds: (1) There is no testimony tending to show such negligence on the part of the defendant as would make it liable for killing the deceased; nor is there any testimony tending to show any negligence of the defendant in the operation of its locomotive and train; no evidence that the engineer saw deceased was in such a position that he was unable to take care of himself in time for the engineer to have stopped the train. (2) And further, that all the evidence for the plaintiff is capable of but one inference—but one inference can be drawn from all the testimony—and that is that the deceased came to his death by

reason of his own negligence in going upon defendant's track, under the circumstances as detailed by plaintiff's witnesses.

"3. Excepts because the presiding Judge erred in charging the jury as follows: 'So, then, you will ascertain, first, what relation did the intestate sustain towards this railroad company, because in order to determine whether or not the railroad company owed the intestate any duty, and whether or not that duty was breached, depends upon the relation the intestate stood towards the railroad company. Now, what was that? You are to ask yourselves that question and answer in the light of the testimony, was it that of a trespasser?' The error consisting in leaving it to the jury to determine what relation the deceased, Sentell, sustained towards the defendant company, it being submitted that it was the duty of the Court itself to determine and charge the jury what such relation was, especially in this case, where the facts were undisputed that the deceased was sitting upon the end of a crosstie on defendant's track, where he had no legal right to be, and was, therefore, a trespasser.

"4. Excepts because the presiding Judge erred in charging the jury as follows: 'There is another relationship, what I call licensee, and I do that in order that you may draw the distinction. I charge you that the definition of licensee, as I shall endeavor to give you, is this: where one goes upon the track, not as a trespasser, but upon some warrant or authority by knowledge, acquiescence of the railroad, and by permission of the railroad, either expressed or implied. Now, if the railroad company, or the owner of the premises, knew—can't you see, knew—that people were accustomed to go upon these premises, and acquiesced in that custom, why, then, a greater degree of care would be due such person than a naked trespasser. The law says, whenever people are accustomed to going upon my premises, I shall take care not to expose them to extraordinary hazardous risk. If they are licensees, they take my premises as they find them. I am not required to enter into elaborate preparation, but if there are

hazards there that they don't know, I should warn them.' The error being: (1) Such charge was inapplicable and to defendant's prejudice, because, under the undisputed evidence, the deceased was a trespasser, and only the law with reference to the duty of the defendant towards a trespasser should have been declared. (2) Under the undisputed evidence that the deceased was sitting upon the end of a crosstie on the defendant's railway track, it was error to charge that he could acquire any legal right by license to occupy such place. Such right cannot be legally acquired. (3) The deceased could not have been a licensee, because there was no evidence showing knowledge, acquiescence, or permission on the part of the railroad company, which would entitle him to sit upon the end of a crosstie on defendant's track.

"5. Excepts because the presiding Judge erred in charging the jury as follows: 'You have heard a great deal about "lookout." What does that mean—the duty of the railroad to keep a lookout? That means this: Take all the facts and circumstances under consideration, would a man of ordinary prudence and reason be expected to keep a lookout under those circumstances; in other words, take into consideration the character of the country, take into consideration the surrounding circumstances, and ask yourself the question, would ordinary care and foresight and prudence require a reasonable lookout to be kept under those circumstances? Suppose a reasonable lookout had been kept, was it negligence in not seeing this particular man; would an engineer of ordinary foresight, ordinary reason and prudence, if he had been keeping a reasonable lookout, have discovered the presence of this man, if he was upon the track, in time to have stopped the train and thereby avoid the injury? In determining that, take into consideration the surrounding circumstances; take a man of ordinary firmness and reason, a man who has other duties to perform, and say whether or not such a man, by the exercise of ordinary firmness and reason, would have discovered this man upon the track, if he was there, in time to have stopped his train and thereby

avoid collision?' The error being: The undisputed evidence showing the deceased to be a trespasser, the defendant was not required to keep a lookout for him; no duty arose until his presence and danger were known and appreciated, and then it was not to wantonly or wilfully injure him. The charge exacted more than the law required.

"6. Excepts because the presiding Judge erred in charging the jury plaintiff's second request, which was as follows: 'If the jury find from the evidence that the deceased, James Sentell, was killed by a train on defendant's railroad, and at such time he was in apparently helpless condition, and if they further find that at the place of such killing, the public, by the permission of the railway company, had been accustomed without objection from the defendant, to travel for more than twenty years, then it would not excuse the defendant, simply, to show that their agent in chrage of said train did not see the deceased in time to avoid the killing, for under such circumstances it may be the duty of the defendant to keep a reasonable outlook at such places to discover any apparently helpless person who may be upon the track.' The errors being the same as specified under exception 4; and further, it was a charge upon the facts, in violation of article V., section 26, of the Constitution of this State.

"7. Excepts because the presiding Judge erred in charging the jury plaintiff's fourth request, which was as follows: 'If persons have long been accustomed to use the track of a company for a passageway at certain localities, the company is charged with notice of such usage, and is under obligation to exercise reasonable care in keeping lookout at such places, among other things, for apparently helpless persons.' The errors being the same as specified under exception 4."

1. We think the presiding Judge did not fail in the discharge of his duty, as here pointed out. The witness, J.

T. McPherson, was defendant's witness; he had been examined with great care by its counsel. His testimony was important to the defendant. On cross-examination, he was subjected to this test, namely: had he ever made an admission of a state of facts in contradiction of his testimony. The effect was not to give testimony as to the *res gestae* of the killing of James C. Sentell; but it was to discredit his testimony by showing that J. T. McPherson had made a statement at variance with his sworn statement. In the case of *Mason* v. *Southern Railway*, 58 S. C., 75, 36 S. E., 440: "When the witness, Pettus, was on the stand, he was asked if he did not say to Mason, the father of the child, when the train backed to the place where the collision took place, at the time Mason climbed up in the cab, that he thought it was a dog or a chicken on the track, and that he did not have time to stop then. He answered, 'No.' The foundation was properly laid 'for contradicting the witness, and the testimony was at least admissible for that purpose." It must be borne in mind that the integrity of the witness alone is in the balance. It is always important that the witness should speak the same words, so far as his meaning or the accuracy of the statement are concerned, in regard to occurrences which he details. If he has made a statement at another time inconsistent with his testimony on the trial, it is perfectly competent on cross-examination to ask him if he did not at a certain time and place make to Mr. Blank a different statement, carefully stating what the statement was. The contradiction was necessarily made by producing Mr. Barton, the gentleman to whom Mr. McPherson made his statement, in Augusta, Georgia. It is not contended that such contradictory statement is worth anything except to impeach McPherson's character for truthfulness. This exception is overruled.

2. This exception relates to the refusal of the acting Circuit Judge to grant the motion for nonsuit as made by

defendant.   We have examined the testimony as affected by the first subdivision of this exception.   We find that there was some material testimony introduced by the plaintiff tending to show negligence by the defendant.   Whether the engineer saw, or was bound to see, James C. Sentell in his position alongside of defendant's track, had some support, even if Sentell was a naked trespasser.

It makes no difference if the trend of the testimony was that Sentell was a naked trespasser, the defendant owed him a duty, viz: that he should not be treated by defendant without some regard to the dictates of humanity.   There was positive testimony that the engineer could have seen Mr. Sentell in plenty of time to have stopped the train before reaching him, and thus have saved his life.   All in all, there was testimony tending to show negligence.   Therefore, the special Judge ought to have refused the motion for nonsuit.

3.  The Circuit Judge properly left the attitude of James C. Sentell to the defendant to the jury.   Granted that the deceased was sitting on the end of a crosstie of defendant's track, it was in testimony that for more than twenty years the defendant had allowed passers to walk alongside its track.   The people had been treated with great courtesy by the railroad, but having treated them with this kindness for more than twenty years, the railroad company must treat them with care.   Not that these foot travelers could claim a right to occupy the track as against the railroad's use of this property.   This Court, in the case of *Jones* v. *R. R. Co.*, 61 S. C., 556, 39 S. E., 758, made these remarks in discussing a nonsuit, and while we have already passed upon the nonsuit in this appeal, yet the language of Mr. Justice Jones, in the case we have just cited, is well worth a repetition here: "The fourth exception alleges error in the refusal of the motion for nonsuit, which motion was based on the ground that the evidence showed that the plaintiff's intestate was a trespasser when injured, and there was no evidence of gross or wilful misconduct of the defendant

in the management of its train.` .The general rule, undoubt-
edly, is that a railroad company owes no duty to a bald
trespasser on its track, except not to do him any wanton or
wilful injury.   *Smalley* v. *Southern Ry. Co.,* 57 S. C., 243,
35 S. E., 4489, and authorities therein cited.   Ordinarily
the mere failure to keep a lookout for adult trespassers that
may be on the track is not evidence of negligence to the
trespasser, because negligence involves a breach of duty to
the injured person, and the railroad company owes no such
duty to the adult trespasser.   It is the trespasser's duty to
lookout for himself, and to give the railroad company a
clear track by getting out of the way.   If, however, the
servants of the railroad company should discover a tres-
passer upon the track and should then fail to observe or use
ordinary care, under the circumstances, to avoid running
him down, this would be evidence from which a jury might
*infer that the injury was the result not of mere inadvertence,
but of a conscious failure to observe due care, or of wanton-
ness or wilfulness"* (italics ours).   "In this case, however,
the complaint alleged that the track, where the injury occurred,
'traversed a populous part of the city of Anderson,
and is much frequented by people passing to and fro along
said railroad, which fact was well known to the defendant,
and its agents and servants and employees,' and there was
some evidence tending to establish such allegations which
made it proper to submit the case to the jury."   (These
latter allegations were in the complaint in the case at bar,
and there was some testimony tending to establish such alle-
gations which made it proper to submit the case to the jury.)
"If such allegations be true, then the circumstances were
such as to call for a higher degree of care to avoid injury
than if the plaintiff's intestate was a bald trespasser.   Even
though the use of the track by the public as a walkway was
not for such length of time nor of such character as to give
a legal right to so use. the track, and even though the evi-
dence fell short of showing any positive consent of such
use by the company, yet if there was evidence tending to

show knowledge of and acquiescence in such use without protest, such evidence would tend to show that the railroad company had much reason to expect the presence of persons on the track, who were there not as bald trespassers, but using it with the knowledge and acquiescence of the (railroad) company. Under such circumstances, it would be the duty of the railroad company to keep a reasonable lookout, or to give warning of the approach of the train, or generally to observe ordinary care, under the circumstances, to avoid injury." We have reproduced so much of the case of *Jones* v. *Railroad, supra,* in order to show that the Circuit Judge in the case at bar has followed the principles recognized and approved in the Jones case, *supra,* and hence there was no failure on his part when he did not assume to decide the question of trespasser, but properly submitted it to the jury. This exception is overruled.

4. We think, under the authority of *Jones* v. *Railroad, supra,* the presiding Judge was correct in charging the jury as to a *licensee.* The trend of the testimony was to show that for more than twenty years the railroad company had acquiesced in the use of the walk alongside of its track, and certainly had not forbidden its use by pedestrians; also the feet of the intestate were on the path of that walkway when he was stricken by the train of defendant, though it is true he was seated on a crosstie of the track. When the intestate, Mrs. Jones, was killed, in *Jones* v. *R. R. Co., supra,* she was walking on the trestle, and yet the charge of the Circuit Judge called the attention of the jury to the fact that, under the consent, either express or implied, she was there as a licensee. This exception is overruled.

5. We do not think the presiding Judge erred in speaking of a lookout by telling the jury what it meant, and under what circumstances a defendant should exercise this duty. Did not ordinary care require this duty of defendant in its acquiescence in the use of its track by pedestrians? Again, we refer to the extracts we have made from the case of *Jones* v. *R. R. Co., supra.* This exception is overruled.

13—70.

194         SENTELL v. SOUTHERN RY.

6. This exception in large measure has been passed upon in our views touching the third and fourth exceptions. No harm, legal harm, resulted to defendant from the charge of the Judge, based upon a hypothetical statement. There was no violation of the mandate of the Constitution forbidding Judges charging upon the facts. See *Jenkins* v. *Railway Co.*, 58 S. C., 373, 36 S. E., 703.

7. We do not think there was any error in the presiding Judge in charging plaintiff's fourth request. We have already passed upon these matters, especially in disposing of appellant's fourth ground of appeal. It is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court is affirmed.

MR. JUSTICE WOODS, *concurring.* In concurring in the opinion of the Chief Justice, I do not understand it is held to be the duty of a railroad company to stop its train because the engineer sees a man sitting on a crosstie in front of the train, even at a place where the public are accustomed to travel with the knowledge and implied consent of the railroad company. Ordinarily, the engineer may well assume that such person is in possession of his senses, and will get out of the way of the train. But in this case there was some evidence that the deceased was sitting bent over with his face in his hands, in an attitude indicative of a helpless physical condition, and that by proper watchfulness the engineer would have observed the significant posture and been put on notice of the helplessness of the man he was approaching in time to stop the train. Whether this helpless condition of the deceased was due to drunkenness, which would warrant a finding of contributory negligence, or to a sudden attack of illness, was, under the evidence, a question of fact for the jury.