HENRY J. MARCHANT, administrator, *vs.* BOSTON AND MAINE RAILROAD.

Essex.    October 18, 1917. — November 27, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, & PIERCE, JJ.

*Negligence,* Railroad, Causing death, Contributory.

In an action against a railroad corporation under St. 1906, c. 463, Part I, § 63, for causing the death of the plaintiff's intestate, a child two years and five months of age, when she was travelling alone over a grade crossing before the enactment of St. 1914, c. 553, it appeared that the plaintiff's intestate was living with her aunt and that the aunt gave permission to her daughter, seven years of age, to go to a public playground and to take the intestate with her, telling her

"to take good care of her and hold her hand," knowing that the children had to cross the railroad tracks to get to the playground and that it was a dangerous crossing, that the children got safely to the playground and there met a boy nine years of age, with whom the girl of seven got on a tilt and "was having a great time there playing on the seesaw," forgetting completely about the intestate, who met a boy four years of age and wandered with him out of the playground until they got to the grade crossing, where the intestate was run over and killed. *Held,* that, the intestate being incapable of exercising care, the administrator must prove, in order to recover under the statute, the exercise of due care on the part of her custodian; that the question of the due care of the aunt was for the jury, but that the girl of seven, to whose charge the intestate had been confided, could not have been found to have exercised any care of her whatever, and that a verdict should have been ordered for the defendant.

TORT by the administrator of the estate of Helen I. Marchant against the Boston and Maine Railroad, a corporation, for causing the death of the plaintiff's intestate on the afternoon of July 10, 1913, when the intestate was two years and five months of age, by negligently running into her at the grade crossing of the defendant's tracks with Elliott Street in Beverly. Writ dated May 26, 1914.

The declaration contained two counts, the first under St. 1906, c. 463, Part I, § 63, and the second alleging a failure to give the signals required by law.

In the Superior Court the case was tried before *Quinn,* J. The evidence relating to the exercise of care by the persons in charge of the plaintiff's intestate is described in the opinion. At the close of the evidence the defendant asked the judge to order a verdict for it on six grounds. The first three, which related to an alleged absence of negligence on the part of the defendant, were waived by the defendant. The other grounds were as follows:

"4. There is no evidence that Helen I. Marchant was in the exercise of the due care required by St. 1906, c. 463, Part I, § 63.

"5. There is no evidence that the persons in charge of said Helen I. Marchant were in the exercise of the due care required by St. 1906, c. 463, Part I, § 63.

"6. At the time of the accident Helen I. Marchant was walking or being upon the defendant's railroad contrary to law and the reasonable rules and regulations of the defendant."

The judge refused to order a verdict for the defendant and submitted the case to the jury, who returned a verdict for the plaintiff on the first count in the sum of $3,000 and returned a

verdict for the defendant on the second count. After the verdict was returned the clerk of the court by order of the judge addressed to the foreman of the jury two questions, which with their answers were as follows:

1. "Does the jury find, on the first count, that the gate tender was negligent?" The foreman answered, "They did, sir."

2. "Does the jury find, on the first count, that the negligence of the gate tender contributed to the accident?" The foreman answered, "They did."

The defendant alleged exceptions.

*C. A. Wilson,* (*H. R. Bacon* with him,) for the defendant.

*J. J. Ronan,* for the plaintiff.

PIERCE, J. This is an action of tort to recover for the death of the plaintiff's intestate, Helen I. Marchant. The evidence was ample to support a finding that the intestate was struck by a train owned and operated by the defendant, while the intestate was travelling over a grade crossing of the defendant's road upon Elliott Street, a public highway in Beverly.

The accident occurred on July 10, 1913, and the intestate, (hereinafter called Helen,) aged two years and five months, was instantly killed. On the day of the accident and for some weeks before, Helen was living with her aunt. On the afternoon of the day of the accident the aunt gave permission to her daughter Evelyn, aged seven, to call for Marie, aged seven, to go down to the playground; she also gave Evelyn permission to take Helen, with an admonition "to take good care of her and hold her hand." She knew that the children had to cross the railroad tracks to get to the playground; that it was a "dangerous crossing," that a great many trains ran over it; that sometimes trains went over it very fast and were liable to come at any moment; that when the children got out of her sight they would begin to play, that they might be liable to stop on the street and play. She testified, "I knew, if I stopped to think of it, that Evelyn and Helen might meet some little friends and not go to the playground, but play in the street. I knew that Helen was less than three years old. I knew that Evelyn had a good many friends of her own age in that neighborhood and that when Evelyn and Helen got on to the playground they could take up whatever amusement either one wanted to and would be liable to do that. They have sand

for those little children to sit down in and play and the teacher is there for that. I knew that when they got to the playground that Evelyn might go her way to play and little Helen might go her way. I knew that there was not any gate on the playground, but an open space there that the children could go out. I knew that it was likely that Helen might go wandering out through the gate on to the street unattended. I knew that if she got out on to the street unattended she was likely to get out on to this railroad crossing. I knew that she was a little bit of a tot, unable to take care of herself." The aunt's station in life, her cares, her household duties and her family were made plain to the jury.

After leaving their home Evelyn and Helen went over the Cabot Street crossing to the home of Marie, and thence the three children went over the Cabot Street crossing again, down Elliott Street and over the Elliott Street crossing to the playground, the entrance to which is one hundred and seventy feet from the nearest point to the crossing. After passing through the opening or space for them to get in Evelyn testified, "Marie and I played around before we saw Leo. I don't remember what Helen was doing." "Leo got on the tilt with me. . . . Then Leo and I went seesawing." "Helen was watching us on the seesaws. I did not say anything to her after I got on the tilts. . . . I don't know how long Helen stayed near the tilting boards while we were tilting . . . I did not see Helen again until I went to look for her. I was having a great time there playing on the seesaw. I kept seesawing as long as I wanted to, but I don't know how long." Leo, aged nine, testified: "My sister Evelyn and a girl named Marie were with Helen. . . . The three were near the tilts. Evelyn and I were on one tilt and Marie and another girl on another one. Helen was right near the tilts with us. I saw Helen and Evelyn when they came to the playground that afternoon. The tilts were the first things I went to. . . . The last I saw of Helen she was around the tilts with us. . . . I didn't see Helen leave the playground. About fifteen minutes after I had seen her watching us I went looking for her around the playground. I didn't find her, and then, after we were looking around for about five minutes we heard the whistle on the train."

While Evelyn was engaged in seesawing on the tilt with Leo,

it could be found that Helen met Johnnie, aged four, who had been sent home by his brother Leo, but had not obeyed; that together the two children went out of the playground and along the path leading to Elliott Street; that they loitered for a short time in the gutter near the playground on the west side of Elliott Street and south of the railroad tracks; that they passed from the sidewalk near to the gutter over the west bound tracks. and the east bound tracks to a point upon the grade crossing near to the location of a street railway at the easterly end of the crossing; that there, upon the planks just outside the northerly rail of the east bound track, Johnnie, frightened by the noise and sight of an approaching train, released the hand of Helen, which he was holding, and fled to a place of safety; while Helen, apparently dazed, stood still until she was struck down and killed by the step or beam of the engine.

The accident taking place before the passage of St. 1914, c. 553, after ruling rightly as a matter of law that Helen was too young to be capable of taking care of herself, the presiding judge submitted to the jury the question of the due care of the aunt when she committed Helen to the custody and oversight of Evelyn, with full and accurate instructions. We are of opinion that the issue presented was one of fact for the consideration of the jury on all the evidence.

The presiding judge submitted also to the jury the question of the due care of Evelyn. In an action of tort for negligence it is the settled law in this Commonwealth that an infant plaintiff, incapable of exercising due care on its own behalf, must prove that its custodian in fact exercised the degree of care which the law requires to be exercised by that person in the reasonable conduct of his own life. *Casey* v. *Smith,* 152 Mass. 294. We assume Evelyn was bound to conduct herself in the care of Helen as children of her age would reasonably be expected to do. *Collins* v. *South Boston Railroad,* 142 Mass. 301. *Travers* v. *Boston Elevated Railway,* 217 Mass. 188. Applying the rule to the undisputed facts, there is no evidence that Evelyn exercised any care of Helen whatsoever after the playground was reached; she ceased on their arrival to guard and protect Helen, allowed her to wander about at will, and herself became lost to the duty she had undertaken in the pleasure afforded by the tilt. The

failure to care for Helen was a neglect and abandonment of duty and was not a temporary failure to perform that duty.

Moreover, the evidence is absolute that at the time and moment of the accident neither Helen nor any one on her behalf was in the active and actual exercise of due care. *Garabedian* v. *Worcester Consolidated Street Railway*, 225 Mass. 65.

It follows that the requests "4. There is no evidence that Helen I. Marchant was in the exercise of the due care required by St. 1906, c. 463, Part I, § 63," and "5. There is no evidence that the persons in charge of said Helen I. Marchant were in the exercise of the due care required by St. 1906, c. 463, Part I, § 63," should have been given, and the second question should not have been submitted to the jury. The exceptions are sustained, and judgment is to be entered for the defendant. St. 1909, c. 236.

*So ordered.*