15990

NETTLES v. SOUTHERN RY. CO.

(44 S. E. (2d) 321)

*Messrs. Moss & Moss,* of Orangeburg, and *Frank G. Tompkins,* of Columbia, for Appellants,

*Messrs. J. Stokes Salley* and *A. J. Hydrick,* of Orangeburg, for Respondent,

September 24, 1947.

Oxner, J.: Perry Donald Nettles, a minor approximately five years of age, was struck and killed on March 14, 1946, by a northbound passenger train of the Southern Railway Company on a trestle in the City of Orangeburg, South Carolina.

This action was instituted under the provisions of Sections 411 and 412 of the Code of 1942, familiarly known as Lord Campbell's Act by the administrator of his estate, for the benefit of his father and mother, against the Southern Railway Company and the engineer operating the train, Harry McNeer, to recover damages for alleged wrongful death. The case was tried in October, 1946, and resulted in a verdict against the Southern Railway Company alone for $2,000.00 actual damages. The plaintiff made a motion for a new trial as to both defendants. The motion was granted as to the Southern Railway Company on the ground that the verdict was inadequate and as to the engineer on the ground that as to him the verdict was contrary to the greater weight of the evidence. Both defendants have appealed from the order granting a new trial. The question as to whether the order of the lower Court is appealable was raised by the plaintiff but later abandoned and we therefore shall not be understood as passing upon it.

The only question for determination is whether the lower Court erred in refusing a motion by defendants for a directed

verdict in their favor made at the conclusion of the testimony, and in refusing a motion by the defendant Southern Railway Company for judgment *non obstante veredicto* made after the verdict was rendered. Defendants contend that there was no evidence of actionable negligence on their part and that the parents of the child were guilty of gross contributory negligence and recklessness.

The trestle on which the child was killed, known as the Atlantic Coast Line overpass, is about 75 feet long and located near the southern corporate limits of the City of Orangeburg. The track of the Southern Railway in this vicinity runs approximately north and south. Approaching the trestle from the south the track is straight and practically level for a number of miles. About three-fourths of a mile south of the trestle the track is intersected by Broughton Street and about a thousand feet south of the trestle by Whaley Street. Between the Whaley Street crossing and the trestle the track is on an elevated roadbed and there are sveral footpaths leading up the embankment, across the track, and down on the other side. There are also footpaths along each side of the track. At both ends of the trestle there are footpaths leading down each side of the embankment. North of the trestle there are similar paths bisecting and paralleling the track. All of these paths have been used with the knowledge of the Railway Company for a number of years. There are no signs forbidding trespassing on the trestle and the evidence shows that pedestrians frequently walk across it, although no walkway is provided for their use. The residential area in this vicinity is rather thickly populated and there are quite a number of industrial establishments. State Highway No. 2, known in the City as South Boulevard, parallels the eastern side of the railroad right of way. Along this highway across from the railroad track there is a paved sidewalk.

The fatal accident occurred about 6:15 P. M. which was before sunset. The weather was fair and visibility good. The Nettles family resided on Whaley Street about three or four

hundred feet west of the crossing. They had lived here for two or three months. The mother of Donald, the deceased, testified that about six o'clock she found that she had no bread for supper and told him and Carroll Jean Stone, a niece visiting in her home, who was then eight years of age and in the third grade in school, to go to Clinkscales' store and get a loaf of bread. This store is located on the eastern side of South Boulevard, which is across the railroad and several blocks from the Nettles home. She further testified that Donald had been with her to this store on other occasions and she had several times sent him alone to make purchases there; that she knew a northbound train was due about 6:15 and stood on the porch and watched the children until they were across the railroad; that she then went into the sunroom where she continued to watch for their return; that the train passed over the crossing about 6:15 and shortly thereafter Carroll Jean returned and informed her of the fatal tragedy. The father of Donald was at work at this time.

The little girl, Carroll Jean, testified that she arrived at the Nettles home about 5:30; that shortly thereafter her aunt told Donald to get some bread and requested her to go with him and hold his hand when crossing the railroad and highway; that she and Donald went to Clinkscales' store but found it closed and then decided to get the bread at Irick's store. This store is located on the western side of the railroad at the corner of the right of way and Sellers Avenue, a distance of about a third of a mile from Clinkscales' store and about 1,300 feet north of the trestle. She further testified that she and Donald left Clinkscales' store and proceeded along the path leading from this store up the embankment to the track (one of the plats in evidence shows that this path is 437 feet south of the trestle) ; that upon reaching the track she looked in both directions for trains but saw none; that they then proceeded north along the footpath by the track; that when they reached the whistle post, shown on the plat to be 150 feet south of the trestle, they heard the

train blow and looked for but did not see the train which was then approaching from the rear; that they continued along the track and about the time they started across the trestle heard the noise of the oncoming train; that they then started running across the trestle; that Donald stumbled several times; that she got across but Donald stumbled and fell a third time at a point about four crossties from the northern end of the trestle where he was struck by the train. According to respondent's witnesses, the train was traveling at a speed of between 50 and 60 miles per hour and did not slow up until after the accident.

The fireman testified that the train, consisting of an engine, express and baggage cars and two coaches, was traveling about 50 miles per hour when passing over the Broughton Street crossing; that shortly after passing this crossing he glanced up the track and saw that the Whaley Street crossing was clear; that when about two or three hundred feet south of the Whaley Street crossing (about 1,200 feet south of the trestle) he commenced wetting the deck, which he said is done for the purpose of settling the coal and dust on the floor so as to prevent dust particles or cinders from flying in his or the engineer's face; that he was so engaged, and for this reason kept no further lookout, until about the time the front of the engine had passed over the trestle; that at this point he looked out and saw an object lying near the track which he thought was a child and immediately called this to the attention of the engineer who proceeded to stop the train. He further testified that the train was traveling about 35 or 40 miles per hour at the time it passed over the Whaley Street crossing but said he did not know when the train began slowing down for the Sellers Avenue crossing. (This crossing is 1,341 feet north of the trestle.) The engineer testified that he looked and saw that the Whaley Street crossing was clear; that during the period when the fireman was wetting the deck he was looking down to keep the hot water used by the fireman from scalding his legs; that for this reason he kept no lookout from a point 200

feet south of the Whaley Street crossing until the engine was 50 or 75 feet from the trestle (a distance of approximately 1,100 feet) ; and that he never saw the children and knew nothing of the accident until the fireman told him that the engine had struck something. He stated that as he approached the trestle he was slowing down the train for the Sellers Avenue crossing.

We shall first determine whether there is any evidence of negligence or recklessness on the part of appellants. It is contended that the deceased was a trespasser to whom the railroad owed no duty except the negative one of not wantonly or willfully injuring him; that the railroad company is not required to anticipate the presence of a trespasser upon the track and owes no duty to keep a lookout for him; and that the duty of using ordinary care and diligence toward a trespasser does not arise until his presence on the track becomes known. Appellants, therefore, argue that as the presence of the deceased was not discovered until after the fatal accident, the evidence fails to show any breach of duty on their part.

It is true that ordinarily the failure to keep a lookout for adult trespassers on the track does not constitute negligence. *Smalley v. Southern Railway Co.,* 57 S. C. 243, 35 S. E. 489; *Jones v. Charleston & W. C. Railway Co.,* 61 S. C. 556, 39 S. E. 758. But assuming, without deciding, that these children occupied the status of trespassers after entering the trestle, it may be reasonably inferred from the evidence that when using the path leading up the embankment to the track and the path along the track to the trestle, they were not trespassers but licensees to whom the railroad company owed the duty of keeping a reasonable lookout and of exercising due care to prevent injury to them. *Jones v. Charleston & W. C. Railway Co., supra; Sentell v. Southern Railway Co.,* 70 S. C. 183, 49 S. E. 215; *Sanders v. Southern Railway Co.,* 90 S. C. 331, 73 S. E. 356; *Hayes v. Atlantic Coast Line Railway Co.,* 196 S. C. 386, 13 S. E. (2d) 921, 923. It was stated in the

*Hayes case* that this "Court, along with a majority of the Courts of other jurisdictions, has adopted what might be termed a liberal view, to the effect that a railroad does or may owe a duty to anticipate the presence of persons along or crossing its tracks at a well-defined pathway at a place in which it has acquiesced in a somewhat general use thereof (not amounting to a legally established public use), or where the circumstances have been such that the presence of persons on or along the tracks at that particular place may reasonably be expected."

The duty to keep a reasonable lookout under the foregoing circumstances would be applicable to an adult on the track. In the instant case the deceased was a child less than five years of age to whom the duty to keep a vigilant lookout was more urgent, as it will be presumed that an adult person apparently in possession of his senses will get out of the way of an approaching train. It was held in *Mason v. Southern Railway Co.*, 58 S. C. 70, 36 S. E. 440, 444, 53 L. R. A. 913, 79 Am. St. Rep. 826, that the railroad company owed a duty to keep a reasonable lookout for an infant of tender years even though such an infant is a trespasser upon the track. The Court there said: "We will next consider whether there was error in refusing to charge that the law does not impose upon a railroad company any duty to trespassers upon its track, except the duty of exercising reasonable care not to inflict injury upon them after they are discovered. The ruling of the presiding judge must be considered with reference to the fact that the infant was of very tender years, to wit, only 16 months of age. The question whether a railroad company owes any duty to an infant trespassing upon its track, until it discovers the infant, has given rise to much discussion, and the authorities upon this subject are in irreconcilable conflict. Even conceding that a railroad company is not bound, as a general proposition, to look out for trespassers upon its track, it nevertheless is bound to exercise ordinary care in running its trains. The law imposes upon it the

duty of keeping a reasonable lookout for obstructions on its track. The safety of its passengers and the rights of the public generally demand the enforcement of this rule. It is a general rule of law that a railroad company is liable in damages for an injury inflicted by it, when its negligence was the direct and proximate cause of the injury. If the direct and proximate cause of the infant's death was negligence of the defendant in failing to keep a reasonable lookout, and to discover the child in time to have prevented the injury, it is as much liable in damages as if the proximate cause of the injury had been its negligence after discovering the child upon its track." The foregoing language was quoted by this Court with approval in *Horne v. Atlantic Coast Line Railway Co. et al.,* 177 S. C. 461, 181 S. E. 642.

In this case the track was straight and practically level for miles south of the trestle. Visibility was good. There was nothing to obstruct the view of the engineer and fireman. Respondent offered testimony tending to show that these children were on the track or the path alongside it for approximately two minutes before entering the trestle. The question of whether in the exercise of ordinary care in keeping a lookout the engineer or fireman should have discovered the deceased on the track in time to stop the train and avoid injuring him was properly submitted to the jury. It is apparently undisputed that neither the engineer nor the fireman kept any lookout from a point approximately 1,100 or 1,200 feet south of the trestle until about the time the engine entered the trestle. From this and the other testimony in the case it might be reasonably inferred by the jury that the failure to keep a proper lookout amounted not only to negligence but to a reckless and willful disregard of the lives of those who might be on the track. In *Wilson v. Southern Railway Co.,* 93 S. C. 17, 75 S. E. 1014, 1016, Mr. Justice Woods said in a concurring opinion: "The duty of a locomotive engineer and a fireman to keep a vigilant lookout ahead, for the sake of passengers as well as those who may be helpless on the track, is urgent,

and the failure to keep a lookout may be evidence of recklessness or wantonness."

We shall next consider appellants' contention that the parents of the deceased were guilty of contributory negligence and recklessness as a matter of law. It is asserted that the mother was negligent and reckless in placing the little boy under the care and oversight of his eight year old cousin for the purposing of going to Clinkscales' store to get the loaf of bread. The evidence tends to show that both of these children possessed at least ordinary intelligence and judgment for children of their age. They were expected to go to Clinkscales' store and return. The mother watched them as they went over the crossing and says that she was in a position to have seen them in returning across the tracks. When they found the store closed, on their own initiative they decided to go by way of the railroad track to Irick's store, a distance of about a third of a mile.

The subject under consideration is annotated in 123 A. L. R. 147, where numerous cases are classified according to the various ages of minor custodians. While the question is not free from difficulty, under all the circumstances we think there may be a reasonable difference of opinion as to whether the mother was negligent in sending this child on this errand accompanied only by the little girl and that the issue should be submitted to the jury. But if it be assumed that the mother was guilty of contributory negligence as a matter of law in this respect, appellants would not be entitled to a directed verdict since we have concluded that there was evidence of recklessness and wantonness on their part to go to the jury. *Wilson v. Southern Railway Co., supra; Lamb v. Southern Railway Co.,* 86 S. C. 106, 67 S. E. 958, 138 Am. St. Rep. 1030.

In *Lamb v. Southern Railway Co., supra,* plaintiff's intestate was killed while walking on a railroad bridge a quarter of a mile in length across the Savannah River. There were notices posted forbidding the use of the bridge by the

public. An action was brought for damages for alleged wrongful death. It was held that the deceased was a trespasser and was guilty of contributory negligence as a matter of law in attempting the dangerous undertaking of walking across the bridge without the excuse of emergency or necessity. The Court further held, however, that there was evidence of wantonness on the part of the railroad company in operating the engine and that the lower Court did not err in refusing a motion for a nonsuit because the contributory negligence of plaintiff's intestate would not prevent recovery.

Appellants further contend that the action is barred by the gross contributory negligence and recklessness of the eight year old custodian of the deceased who, it is said, was the agent of the parents. It seems to be established by the weight of authority that if the parents of a child entrust it to the temporary custody of another and the negligence of the custodian proximately contributes to an accident resulting in the death of the child, the negligence of the custodian is, on principles of agency, imputed to the parents and has the same effect on their right to recover as if they had been guilty of the negligent act. 16 Am. Jur., page 94; Annotations in 32 L. R. A., N. S., 410 and 23 A. L. R. 655. This rule has been applied in cases where the custodian was a minor. *Gress v. Philadelphia & Reading Railway Co.*, 228 Pa. 482, 77 A. 810, 32 L. R. A., N. S., 409, 21 Ann. Cas. 142; *Schlenks v. Central Pass. R. Co.*, 23 S. W. 589, 15 Ky. Law Rep. 409; *Richmond F. & P. R. Co. v. Martin's Adm'r*, 102 Va. 201, 45 S. E. 894. Appellants say that in determining whether a minor custodian is negligent or reckless, the test is not whether he exercised the degree of care and prudence expected of a child his age but whether he exercised that degree of care and prudence required of an adult. There seems to be a dearth of authority on the standard of care required of such minor custodian. As bearing on this question see *Gress v. Philadelphia & Reading Railway Co.*, supra; *Roberge v. Follette*, 261 Mass.

438, 158 N. E. 834; *Marchant v. Boston & M. R. R.,* 228 Mass. 472, 117 N. E. 842; *Faircloth v. Framingham Waste Material Co.,* 286 Mass. 320, 190 N. E. 609.

It seems to the writer that if under all the circumstances the parent was not negligent in the selection of the minor custodian, there is much to be said against judging the conduct of such minor by the rigorous standard suggested by appellants. But in determining whether the Court below erred in refusing appellants' motion for a directed verdict, we do not find it necessary to pass upon this interesting question.

If we concede for the purpose of this discussion that this child of tender years was on the track as a result of the negligence, or even gross negligence or recklessness, of either the mother or the minor custodian, we think it was for the jury to say whether such negligence or recklessness, if any, contributed as a proximate cause of the death of the deceased or whether such negligence was a mere condition or remote in the chain of causation. *Bodie v. Charleston & W. C. Railway Co.,* 61 S. C. 468, 39 S. E. 715; *Key, Administratrix, v. Charleston & W. C. Railway Co.,* 144 S. C. 164, 142 S. E. 336; *Leppard v. Southern Railway Co. et al.,* 174 S. C. 237, 177 S. E. 129; *Seay v. Southern Railway-Carolina Division,* 205 S. C. 162, 31 S. E. (2d) 133. The correctness of the principles announced in these cases was recognized in the recent case of *Truett v. Atlantic Coast Line R. Co.,* 206 S. C. 144, 33 S. E. (2d) 396. In both the *Bodie* and *Seay* (205 S. C. 162, 31 S. E. (2d) 138) cases the Court quoted the following with approval: "* * * When the negligence of the person inflicting the injury is subsequent to and independent of the carelessness of the person injured, and ordinary care on the part of the person inflicting the injury would have discovered the carelessness of the person injured in time to avoid its effect and prevent injuring him, there is no contributory negligence, because the fault of the injured party becomes remote in the chain of causation. In such a case the want of

ordinary care on the part of the injured person is held not a judicial cause (*i. e.,* a proximate cause) of his injury, but a condition of its occurrence."

It was held in *Key, Administratrix, v. Charleston & W. C. Railway Co., supra,* and *Leppard v. Southern Railway Co., supra,* that although a person, due to his own negligence, is on the track in a helpless condition from intoxication, at a place where the railroad is required to keep a reasonable lookout, if those in charge of the operation of the train see him in this condition or by the exercise of reasonable diligence in keeping a proper lookout should have seen him and appreciated his perilous position, in time to stop the train and avoid injuring him, it is their duty to do so; and if such a person is injured and there is evidence tending to show a breach of this duty, it is a question for the jury as to whether the negligence of the injured party contributed as a proximate cause of his injury or whether his negligence operated merely as a condition or remote cause. No one, we apprehend, would contend that an innocent, helpless child is not entitled to equal protection. So in the instant case, even if the presence of this five year old child on the track was due to the negligence or even gross negligence of his mother or custodian, it may be reasonably inferred from the evidence that with a train rapidly approaching from his rear he was in a position of imminent peril which, by keeping a proper lookout, should have been observed and appreciated by the engineer and fireman in time to have stopped the train and avoid injuring him. If the jury took this view of the testimony, it was for that body to determine whether the failure to keep a proper lookout, rather than the negligence or gross negligence, if any, of the mother or custodian, was the proximate cause of the fatal accident.

We are further asked to hold that if recovery by the administrator on behalf of the mother is barred by her own negligence or recklessness, that such negligence or recklessness would be imputed to the father. Hav-

ing held that the question of recovery in behalf of the mother must be submitted to the jury, it is not necessary to pass upon this feature of the case, as the only question before us is whether there was error in not directing a verdict in behalf of appellants. But since the question will probably again arise on the next trial, we shall undertake to answer it. Appellants apparently concede that this Court has held adversely to their contention in *Horne v. Atlantic Coast Line Railway Co., supra,* 177 S. C. 461, 181 S. E. 642, and *Fisher v. J. H. Sheridan Co., Inc.,* 182 S. C. 316, 189 S. E. 356, 108 A. L. R. 981. It is said, however, that these cases were erroneously decided and that the Court overlooked the effect of Section 8638 of the Code of 1942. But when due regard is given to this section, we are still of the opinion that the *Horne case,* which was followed in the *Fisher case,* was correctly decided and adhere to the principles therein laid down.

In conclusion, it should be stated that we are not to be understood as expressing or intimating any opinion upon the weight and sufficiency of the testimony. What inferences should be drawn are exclusively for the jury. We merely hold that there was no error in refusing appellants' motions for a directed verdict and for judgment *non obstante veredicto.*

The order of the lower Court granting a new trial is affirmed.

BAKER, CJ., and FISHBURNE, STUKES and TAYLOR, JJ., concur.