Beatrice PARKER, Plaintiff,

v.

SOUTHERN RAILWAY COMPANY, and Atlantic Coast Line Railroad Company, Defendants.

Civ. A. No. 4019.

United States District Court
E. D. South Carolina,
Columbia Division.

Sept. 14, 1955.

A. Fletcher Spigner, Jr., Columbia, S. C., for plaintiff.

John Gregg McMaster, of Tompkins, Tompkins & McMaster, Columbia, S. C., for Southern Railway Co.

Julius W. McKay, of McKay, McKay, Black & Walker, Columbia, S. C., for Atlantic Coast Line R. R. Co.

WILLIAMS, District Judge.

This action was brought by the plaintiff against the defendants, Southern Railway Company and Atlantic Coast Line Railroad Company, to recover damages alleged to have been sustained by the plaintiff in a collision with a train operated by the Southern Railway Company across Green Street in the City of Columbia, State of South Carolina. The case was tried before me and a jury on June 13, 1955. At the conclusion of the testimony for the plaintiff, each of the defendants moved for an order of dismissal. The Court, however, took additional testimony of witnesses for the defendant, Atlantic Coast Line Railroad Company. At the conclusion of this tes-

timony, I granted a motion for a directed verdict in favor of both defendants against the plaintiff, and judgment in accordance therewith was entered on June 18, 1955.

Thereafter, the plaintiff served a timely notice of motion for a new trial specifying ten grounds of error. The motion was orally argued before me on July 14, 1955, and the parties were requested to submit briefs.

The various grounds relied on by the plaintiff have been summarized by her for convenience in discussion under the following questions:

1. Is the evidence susceptible of more than one reasonable inference as to the negligence and willfulness of the defendants and the contributory negligence and willfulness, if any, of the plaintiff as the proximate cause of the collision?

2. Under the doctrine of "Last Clear Chance," did the defendants have the last clear chance to avoid the collision with the plaintiff?

An additional ground for granting a new trial was presented in the brief of plaintiff, which I shall denominate number:

3. Did the failure of Southern Railway Company to introduce testimony raise an inference that such testimony would have been unfavorable to it?

The ruling of the Court can be understood more clearly by reference to testimony of the plaintiff on pages 11 and 12 of the transcript. On direct examination she testified as follows:

"Q. You started on across. State whether or not in your mind as you viewed that crossing, coming up to it, that that warning signal was being given because of the train which you have just described? A. Yes, sir. That's what I thought. I saw that train and I figured that was the one.

"Q. Did you keep watching that train? A. Yes, sir.

"Q. Keeping your eyes on it? A. Yes sir. I kept watching the train.

"Q. And when it stopped, you went ahead? A. Yes, sir.

"Q. How many tracks are there, Mrs. Parker, if you know? A. I don't know. It's a good many, four or five, I would say.

"Q. All right. And, you went on ahead when this train stopped? A. That's right.

"Q. The signal was on, and you thought the signal was signaling for that train you have just described, didn't you? A. Yes, sir.

"Q. When did you first have any 'idea from sight or hearing or anything else that your car was going to be run into by another train? A. When Mrs. Peak hollered that there was another train.

"Q. Now you had proceeded on after the first train stopped? A. Yes, sir.

"Q. The train stopped on your left, and Mrs. Peak hollered that there is another train, is that right? A. That's right.

"Q. Did you glance to your right then and see the train? A. Yes, sir, I glanced and when I looked, the train was right on me.

"Q. Right on you? A. Yes sir.

"Q. And then the collision? A. That's right.

"Q. You never had seen that train before? A. No, sir.

"Q. You had been looking at this other train the whole time? A. Yes, sir."

On page 42 of the transcript, the plaintiff testified:

"I didn't look that morning after I saw the other train; I started on across."

The testimony of Sergeant P. L. O'Quinn, a witness for the plaintiff, was to the effect that the plaintiff had an unobstructed view of the train for a long distance when she was sixty feet away, and that her view when she was 243 feet from the crossing was unobstructed, so that a train 243 feet south of the cross-

ing was clearly visible. Plaintiff's testimony tr. pp. 51–54.

While the trial was in progress I went to the scene of the accident and remained for a sufficient length of time to see a number of trains pass over the crossing. I do not base my opinion for refusing the motion for a new trial on what I saw and heard at the crossing. My observation, however, convinced me that the testimony which was presented at the trial was correct. The testimony of the plaintiff herself shows conclusively that she was guilty of negligence, which was the proximate cause of her injury. The testimony shows that the flashing signals were properly operating for a considerable period before she approached; that the crossing bells were ringing but that she never looked to the right even though the view was perfectly clear to ascertain whether or not the Southern train was coming. The testimony shows that all the signals were given that the law requires, and that the plaintiff could have avoided the accident if she had exercised the care required by law.

In Atlantic Coast Line R. Co. v. Glenn, 4 Cir., 198 F.2d 232, the Circuit Court of Appeals cited Robison v. Atlantic Coast Line R. Co., 179 S.C. 493, 184 S.E. 96, 100, as being controlling in crossing cases. In this case our Supreme Court stated:

"It has been well said that it is always train time at a railroad crossing. The law regards a railroad crossing as a place of danger. The very presence of such a crossing is notice to the person approaching or attempting to cross it of the danger of colliding with a passing engine or train. * * * And, because of the danger, there is imposed upon such person the duty of reasonable care and caution and the reasonable and ordinary use and exercise of his senses of sight and hearing for his own safety and protection; and, subject to applicable qualifications and limitations, he is required at least to look and to listen for an approaching engine or train before

venturing to cross the track; and, if he fails to exercise such ordinary care, he incurs whatever danger he could thereby have discovered and avoided; and, if such failure results in injury, he is left without a remedy."

In the case of Threlkeld v. Wabash R. Co., Mo., 269 S.W.2d 893, 895, a truck driver drove on the main line track despite a warning of a red flashing signal and assumed that the lights were flashing because a train was at the station. He never looked to his right, or south, and was struck by a train traveling on the main line and received severe personal injuries. The Court in that instance said:

"We must hold that his failure to look at that point before proceeding on to the mainline track, in view of the warning he knew as being given him by the flashing lights, was negligence as a matter of law which directly contributed to his injuries. * * * [The] plaintiff was negligent as a matter of law in completely disregarding the warning he was receiving from the flashing lights and going on to the mainline track, in face of such warning, without stopping and looking at a place where he could see what was approaching on the mainline track. It was clearly negligent to assume without looking that the flashing lights were only operating because a train was standing at the station and did not mean that a train was approaching from the south on the mainline track."

Under a recent decision of our Supreme Court, Jacobs v. Atlantic Coast Line Railroad Co., 85 S.E.2d 749, 750, a truck driver drove onto a crossing in the face of a flashing signal and was killed when the train struck his vehicle. The testimony showed that he was traveling at a slow rate of speed and could have stopped within a few feet. The lower Court refused to direct a verdict and the jury brought in a verdict for $12,000 for the plaintiff. The Supreme Court reversed the decision and stated:

"Respondent argues several alleged elements of negligence, to wit, the failure of the automatic crossing light to function, the speed of the train, the failure of the crew to keep a proper lookout and of the engineer to sooner apply the emergency brakes. Conceding without deciding that there was evidence as to each of these from which the jury may have inferred negligence, we do not think that it could reasonably be determined to have been more than simple negligence, to which the manifest contributory negligence of the deceased was a defense. He entered the crossing at such a slow rate of speed that respondent's own witness testified that he could have stopped within about five feet. His approach included a distance of about seventy feet during which he could have looked up the tracks and seen the train and its lights, and from a considerably greater distance, could have heard the signals of the train had he listened, just as the respondent's policeman-witness did. We cannot escape the conclusion that the deceased was guilty of at least simple contributory negligence which was a proximate cause of the collision and, therefore, bars recovery as a matter of law.

\* \* \* \* \* \*

"Further adverting to respondent's contentions of negligence of the instant appellants, in several cases we have considered the effect of the alleged failure of automatic crossing lights to function. Cammer v. Atlantic Coast Line R. Co., 214 S.C. 71, 51 S.E.2d 174, Jennings v. McCowan, 215 S.C. 404, 55 S.E.2d 522. Vernon v. Atlantic Coast Line R. Co., 221 S.C. 376, 70 S.E.2d 862. The presently pertinent gist of them is that one cannot blindly depend upon such lights but must use his senses of sight and hearing as best

he can under the circumstances to ascertain the approach of a train, although the light is not flashing the danger signal. There was evidence of nothing else in the case at hand to distract the truck driver's attention from the approaching train. There was at the time no other railroad or highway traffic."

■ The plaintiff, Beatrice Parker, testified that her view of the tracks south was obstructed by a cement block house on her right as she approached the crossing. Testimony from her own witnesses revealed that she had a clear and unobstructed view after she had crossed the first track. Under our State law the fact· that the view of the track is partially obstructed at a crossing does not relieve the plaintiff of the obligation to look and listen for approaching trains. Jennings v. McCowan, 215 S.C. 404, 55 S.E.2d 522; Arnold v. Charleston & Western Carolina R. Co., 213 S.C. 413, 49 S.E.2d 725; and Carter v. Atlantic Coast Line R. Co., 194 S.C. 494, 10 S.E.2d 17.

■ There is no question in my mind that the plaintiff was guilty of negligence, if not willfulness. There is no evidence of negligence on the part of either the Atlantic Coast Line Railroad Company or the Southern Railway Company. The plaintiff failed to prove that the Southern Railway Company did not give the signals required by law. The burden is on the plaintiff to prove all the facts on which she relies to recover. She failed to prove any of the facts which would justify recovery.

■■ I do not think the second question needs extended discussion. The doctrine of "Last Clear Chance" would not apply in this case. The following taken from 65 C.J.S., Negligence § 213, p. 978, sets forth the elements of the doctrine of the "Last Clear Chance":

"A plaintiff who seeks recovery under the doctrine variously referred to as the last clear chance doctrine, the humanitarian doctrine, and the doctrine of discovered peril has the burden of establishing all the facts essential to make such doctrine applicable, and such facts must be proved and will not be presumed. Thus, where such facts are essential to the applicability of the last clear chance doctrine, plaintiff has the burden of establishing that the injured person was in a perilous situation, that he was oblivious to the peril or was unable to extricate himself from the peril, that defendant had actual knowledge of plaintiff's perilous situation or that he had notice of it or should have known of it, and that defendant could have avoided the accident by the exercise of due care. The burden is on plaintiff to establish that the subsequent negligence of defendant was the proximate cause of the injury."

In Bishop v. Atlantic Coast Line R. Co., 213 S.C. 125, 48 S.E.2d 620, 626, the plaintiff sought to invoke the doctrine of last clear chance, but the court held that it was not applicable. After stating the facts in the cases of Seay v. Southern Ry., 205 S.C. 162, 31 S.E.2d 133; Leppard v. Southern Ry. Co., 174 S.C. 237, 177 S.E. 129; Nettles v. Southern Ry. Co., 211 S.C. 187, 44 S.E.2d 321, the Court said:

"In most, if not all, of these cases the injured person or deceased was physically or mentally unable to extricate himself from the peril. Here we have a case where the deceased was in full possession of his faculties. If we accept appellant's own testimony to the effect that before reaching the crossing the speed of the truck was reduced to 10 or 15 miles an hour, the decedent was not in a position of imminent peril until within 20 or 30 feet of the crossing. Prior to that time the railroad employees had a right to assume that he would stop at a place of safety. There is no evidence that the fireman knew of the driver's perilous situation until about the time the rear of the tender reached the crossing. He then called upon the engineer to stop and the train was stopped within four or five feet.

The doctrine now sought to be invoked by appellant is not applicable to the facts of this case. * * * "

In a recent case from North Carolina, Mount Olive Mfg. Co. v. Atlantic Coast Line R. Co., 233 N.C. 661, 65 S.E.2d 379, 386, after setting out the elements of the last clear chance doctrine, the Court said:

"There must be legal evidence of every material fact necessary to support the verdict, and such verdict 'must be grounded on a reasonable certainty as to probabilities arising from a fair consideration of the evidence, and not a mere guess, or on possibilities.' 23 C.J. 51; 32 C.J.S., Evidence, § 1042. Mercer v. Powell, 218 N.C. 642, 12 S.E.2d 227, and other cases, including Poovey v. International Sugar Feed Number Two Co., 191 N.C. 722, 133 S.E. 12, 14.

"In the Poovey case, supra, it is said: ' "The rule is well settled that if there be no evidence, or if the evidence be so slight as not reasonably to warrant the inference of the fact in issue or furnish more than materials for a mere conjecture, the court will not leave the issue to be passed on by the jury." (Citing cases.) This rule is both just and sound. Any other interpretation of the law would unloose a jury to wander aimlessly in the fields of speculation.' "

■ The testimony of the plaintiff and other witnesses did not impose upon the Southern Railway Company any duty to explain why or how the accident occurred, and its failure to offer testimony does not give rise to an inference that the testimony of the crew of the Southern Railway Company would not have been favorable to the defendant. Such an inference is not proper and the cases cited by the plaintiff are not applicable to the facts here. In the case of Mickle v. Dixie Security Life Ins. Co., 216 S.C. 168, 57 S.E.2d 73, the question involved is whether or not there had been any fraud in connection with the cancellation of an insurance policy. After the plaintiff had testified as to her dealings with the agent of the defendant, defendant introduced testimony of a number of other witnesses, but failed to put up the agent who was the only man who would have known and could have testified to the circumstances under which the policy was canceled.

In the case of Robinson v. Duke Power Co., 213 S.C. 185, 48 S.E.2d 808, the defendant introduced testimony of several witnesses, as well as photographs of the scene of the accident, a collision between a bus and a truck, but failed to put up the driver of the bus or the driver of the truck. This case involved an injury to a fare-paying passenger on a public carrier, and the plaintiff therefore had the benefit of a presumption of negligence on the part of the carrier, which the carrier would have to rebut in order to defeat the plaintiff's cause of action. It would appear, therefore, that it was essential to the defense to introduce the testimony of the man whose negligence was alleged to have been the proximate cause of the delict.

In the present case, however, there was no presumption of negligence on the part of either railway company. The plaintiff had to prove negligence in order to recover, and it is quite clear that she failed to prove negligence. She not only failed to prove negligence on the part of the defendants, but she has proved that she herself was guilty of negligence which was the proximate cause of the injury. This principle has been approved in the case of Momeier v. Koebig, 220 S. C. 124, 66 S.E.2d 465, 468, where the Supreme Court of South Carolina said:

"Respondent emphasizes in his argument the doctrine in this state that the failure of a defendant to produce a material witness justifies the inference that such witness' testimony would have been unfavorable to the defendant. But this line of cases is inapplicable to the situation here because plaintiff-respondent's evidence established no burden of proof or duty to go forward with evidence on the part of the defendant-appellant."

It is quite clear to me that the plaintiff failed to prove negligence on the part of defendants but was guilty of negligence herself which was the proximate cause of the injury. It is therefore

Ordered that the motion for a new trial be denied.